Dispense with the calling of the day calendar and begin by hearing argument in Cho v. City of New York. Morning, Your Honors. Robert Johnson for plaintiffs' appellants. You might want to lift the microphone up a little bit so we can hear you better. Thank you. You can also raise the whole podium by the microphone. That's all you get. All right, great. Good morning, Mr. Johnson. Good morning. Your Honors, plaintiffs in this case sued to challenge settlement agreements that were extracted by the City of New York and merely ratified by the state courts. Plaintiffs were never in a position to file an appeal from a state court judgment. Indeed, if plaintiffs— You may not have filed a motion to amend the judgment and then if that was denied, they could have appealed that. Potentially. Potentially. Although, to be clear, plaintiffs in this case wouldn't be seeking to amend the judgment. They would be seeking to change the settlement agreement. Well, the settlement agreement is embodied in the judgment, so you could get relief from the state court, I assume, by having the state court strike those provisions from the judgment. Now, on the other hand, is it your contention that if that happened, you would still be bound by the settlement agreement that was independently entered? Well, exactly, Your Honor. The settlement is a contract between the parties that exists independent from the judgment. There actually are state court cases, for instance, in the context of divorce and settlement agreements, separation agreements, where people seek to modify the terms of the settlement agreement by moving to modify a divorce judgment. And what the state courts say is, no, we can't do that. You have to bring a separate suit to challenge the terms of the settlement agreement as unconscionable or challenging duress or other grounds. So, it's not actually clear that we could have brought these claims or that plaintiffs could have brought these claims through a motion to amend the judgment. I understand the city to be taking the position that it couldn't have enforced the provisions in the settlement agreement that you object to absent the court order and that it really had no effect. And so, we still should really focus on the court order and its effect here in the context of the Rooker-Feldman argument. What's your response to that? Well, I think two of the three agreements actually provide that they become effective immediately upon the agreement of the parties. And we cite to those pages of the record in our brief. As to the third, the agreement is essentially contingent on the external event that the agreement be approved by the court. But that's no different, for instance, in an agreement to buy a house. It might be contingent on approval of a mortgage. But that doesn't mean that it's anything other than a contract. I understood still the city to be saying that they couldn't have enforced those provisions, that they somehow needed the imprimatur of the court in order to enforce them. Is that mistaken? Yeah, I don't think that's accurate. This is a contract between the parties and it's enforceable as a contract. And the state courts are quite clear about that. For instance, we cite the case of 3701 31st Avenue Realty Corporation. This was a case that actually a state court case that involved a settlement of a nuisance case like the settlements here. And the question in that case was, you know, what is the preclusive res judicata effect of such a settlement? And the state courts made clear that in that case that the settlement agreement had no preclusive effect. It was entitled to respect, obviously, as a contract between the parties. But it contains no judicial findings. It's not a judgment of the court. It's a settlement agreement. It's a contract. And that really, I think, is the fundamental error. It could be enforced, for example, by if Ms. El-Shabaaz allowed her son to come into the apartment, the city could file a suit for specific performance. Or I suppose they could just return to court, right, under that, under the agreement that you had and say, now we want to evict her because she breached this agreement. MR. GOLDSMITH. That's exactly right, Your Honor. Yes. These are contracts that the city could enforce potentially by returning to the same, trying to file a motion, the same action. They could also file, I think, a new action. But the key point, I think, for purposes of Rooker-Feldman is that these are contracts. And what we have done is we filed a suit seeking to challenge contracts. JUSTICE KENNEDY. And so the relief you're asking for in this case is what exactly? MR. GOLDSMITH. So we're seeking really three things. The first is an award of nominal damages, which I think is important because the city concedes that plaintiffs could seek damages notwithstanding Rooker-Feldman. So at the minimum, I think the case has to be sent back for the claim for nominal damages to proceed. JUSTICE GINSBURG. And nominal damages would be for what exactly? MR. GOLDSMITH. For the violation of their constitutional rights by the city. JUSTICE GINSBURG. By imposing an unconstitutional condition as a condition of continued occupancy of the residence or the store? MR. GOLDSMITH. Exactly, Your Honor. Yes. And then the second thing we seek is declaratory relief. This action really is just, I think, a fairly straightforward action seeking JUSTICE KENNEDY. So the declaratory relief and injunctive relief that you're asking for would be directed at the city and would, what, say they can't take any action to enforce these allegedly unconstitutional agreements? MR. GOLDSMITH. Yes, exactly. I think this is really not that uncommon of a case. There are things about it that I think are perhaps unusual. But at bottom, this case is really just a declaratory judgment action seeking to invalidate a contract. And that's really all it is. JUSTICE KENNEDY. There are certain unusual aspects indeed. I mean, I realize the merits of this are not before us, but I was a little bit puzzled at the idea that asking someone to waive a constitutional right as part of a judicial settlement is unconstitutional. Being a criminal lawyer, I see that happen every day in the form of plea bargaining, right? Somebody can give up their right to a jury trial and everything that goes with it, and that's a condition of getting some benefit from the prosecutor, from the government, in the form of reduced charges. How is this different from that? MR. GOLDSMITH. Well, as you said, the merits are not before the Court. But I would, for instance, direct the Court to the case of United States v. Olivares, which we cited in our papers in the Court below. In that case, this Court addressed the application of the unconstitutional conditions doctrine to plea bargaining. And it said, for instance, that if a defendant was required as a condition of a plea to give up his right to a lawyer, and from that point forward, he could never again have a lawyer. MR. STEINWALD. In the future, and not related to the particular case. Is that a key distinction? MR. GOLDSMITH. Right. Or even in that particular case, I think, that if you were to say, you can't have a lawyer in this proceeding going forward, that that would violate the unconstitutional conditions doctrine. So certainly not all waivers of constitutional rights and pleas or settlements are unconstitutional. But I think this Court has already said in Olivares  MR. STEINWALD. As you said, I get your point. And the merits are not really before us here.  MR. GOLDSMITH. No, please. And so really, I think this case at bottom is very simple. Rooker-Feldman is a doctrine that is designed to protect the exclusive appellate jurisdiction of the United States Supreme Court. And it prohibits district courts from hearing de facto appeals from state court judgments. And this case is not a de facto appeal. It involves claims that could not have been raised through an appeal. If the appeal had been brought, it would have been dismissed for lack of jurisdiction. The doctrine simply cannot be applied to bar that type of a claim. It's a very narrow doctrine that the Supreme Court has applied to cases exactly like or very similar to Rooker and Feldman, both of which involved plaintiffs who lost in the merits in state court and then came to federal court trying to overturn those merits judgments through the federal courts. And this isn't that type of case. MR. STEINWALD. So is there any type of case where there is a settlement that needs the approval of the court that would be barred by Rooker-Feldman? MR. GARRETT. I think it's possible, for instance, in the context of a class action settlement that actually is approved by the court where if you had a party who had litigated objections to the class action settlement on the merits and then tried to challenge that judgment in the federal courts, I think that might trigger Rooker-Feldman, for instance. But I think you really have to look at the mechanics of how it works in the state court, which is ultimately not surprising because this is a doctrine about appeals that come up through the state courts. MS. NISBET. Can I ask a quick question? So could you have also just waited, rather than going back and applying to the state court here for a modification of the settlement agreement, could you have just waited until the city tried to enforce one of the conditions that you say is unconstitutional and protested in that context of an enforcement action that it was an unconstitutional condition, unconstitutionally extracted in the agreement, and pursued those claims in the state court later on? MR. GARRETT. Well, I think the problem with that would be that in order to do that, we would have, the plaintiffs not only would have had to wait, they would have actually had to go out and violate these agreements. And that's, right now, plaintiffs are complying with these agreements. They are excluding their family members from their homes. Their son, Cho, has installed the warrantless surveillance systems that he's required to install. So they are suffering these constitutional harms right now. And they don't want to violate these agreements, because if they did so, they'd be at risk of being evicted from their homes or their business. And what the Supreme Court said in the MedImmune case, which was a pre-enforcement challenge to a contract, was that just like with statutes, with contracts as well, you don't have to violate a contract in order to get the case into court. You can come to court and essentially bring a pre-enforcement challenge to that contract. I thought you were also going to say, and maybe I'm mistaken that this is a position you might take, that even if it were an available and equivalent remedy to sort of do this in some state court litigation or either affirmative or defensive, that's not what Rooker-Feldman is about in the sense that there are often cases where there are parallel litigations in state and federal court and the state court litigation might be equally effective if successful. But the fact that things are going on or could be going on is not, I thought, what Rooker-Feldman is about. Am I wrong about that, or is that? No, I think you're exactly right about that. And that really is what the Supreme Court said in the ExxonMobil case, is that the problem, if Rooker-Feldman is applied too broadly, is that it essentially sweeps aside these much more narrow doctrines, such as res judicata, which the city has never argued here. And labor abstention and all these other things that are ways of adjusting the relationship between state and federal courts. Exactly. And that Rooker-Feldman sweeps all of that aside and it's an overly broad tool, which is exactly why it has to be confined, which is not what happened here. Thank you, Mr. Johnson. You've reserved two minutes for rebuttal. Mr. Warren. May I please the court? On behalf of the city, my name is John Moore. This case, I think, represents at root a disagreement as to what the Rooker-Feldman doctrine stands for. And the position that plaintiffs are advocating is one that neither the Supreme Court nor this court has ever recognized. Rooker-Feldman arises from the fact that federal district courts have our courts of original jurisdiction. They're not courts of appellate jurisdiction, and that appellate jurisdiction from state court judgments is vested entirely in the Supreme Court. The reason that Rooker-Feldman applies is not to make sure that the Supreme Court gets first dibs on those cases. It's because the federal district courts just don't have the jurisdiction to consider appellate cases from state courts. The Supreme Court has certainly defined the bounds of Rooker-Feldman narrowly. In the ExxonMobil case, they lay out what this court has interpreted as a four-factor test. Plaintiffs are asking for a fifth factor to be added. The Supreme Court or this court could have said something to the effect of, Rooker-Feldman applies when a state court appeal is possible, but a plaintiff, or defendant, I suppose, opts to pursue the case in federal district court instead. Let me ask you a question, though. Two of the stipulations stated that they went into effect without even requiring it so ordered by the state court. And reading those, you think that the plaintiffs were bound by them absent any state action. Why doesn't that just of itself eliminate this from the Rooker-Feldman purview? Two points. The first is that there's at least one plaintiff who that just doesn't apply to, and so one of their plaintiffs, even if that's the saving grace in the complaint and in the facts, then that doesn't apply to one of their three plaintiffs. For those other two, I think that the problem with focusing on that point is it is at odds with much of what they have argued below, both in their complaint and in arguing that they're not time-barred or understanding. What is the city's position about whether it could have enforced the agreements absent as so ordered by the state court? So had the state court, had there been no state court action, I think that it poses a question, because the reason that they had to go to be ordered by the state court is that there was a pending civil enforcement actions before the court. An agreement ending that case had to go back to the court. You could have just dismissed it. Correct, but this was in the form of that settlement agreement. And the fact that the agreement was taken to the court in order to be so ordered, as opposed to simply dismissed with there being a private contract set aside, I think distinguishes that from cases in which the court could have, or rather the city could have, continued to enforce these beyond that point without any state court action. Well, but excuse me, Mr. Moore, I mean, isn't that just your choice that you, your client, the city, chose to go to the court and ask for it to be so ordered? In the sense that if you didn't do that, if you simply made a private agreement, and I'm guessing that this happens frequently when it's just a matter of money changing hands, a case gets settled, money changes hands from one side to the other, and then the plaintiff just comes to court and says, hey, we're done because we've worked it out ourselves, and it goes away. In a case where one party is agreeing to do something in the future, sometimes the party that extracted that concession would like to have an additional enforcement string to their bow, and they ask the court to so order it. Some remedies would only be available based on that so ordering. I assume you could not have Ms. Shabazz, for example, held in contempt of court for having her son in her apartment if there was not a court order embodying the agreement, but other sorts of relief might well be possible, right? That may be the case, but the fact that the city here didn't opt to take this back to the court indicates, or means, that the challenge that the plaintiffs have brought is to those judgments that have been so ordered. And again, as they argued below... What if they're, I mean, I take it, now again, there may be some issue as to what the complaint actually asked for, and what they argued below, and whether they've waived something, although I'm not sure why that wouldn't prevent them from being a slightly different lawsuit. If what Mr. Johnson says he's asking for is enjoining you from taking any steps to enforce that judgment, what happens to the state court and the state court's judgment? It's only the city that's being bound by what relief they're asking for. Perhaps, Your Honor, though the court in the Hoblock decision, on page 88 of that decision, said that, you know, that's kind of clever pleading, saying, we'll leave the judgment in place, but no one can possibly enforce it, that that is not a way around the Rooker-Feldman Doctrine. It's maybe smart, it may be a smart approach, but it doesn't get by the jurisdictional bar. What they've alleged here is an attempt, is that the agreements, the ongoing existence of those agreements constitutes ongoing continuing injury to them. The source of the ongoing violation, as was argued below, is the agreements themselves, and those are at this point, because of decisions that were made, and may have been made differently, but at this point, the facts that we're dealing with are that those agreements are inextricably bound up with the state court judgments. I hear you. Could you give me an example of what would be, you know, the cases talk about it's not a Rooker-Feldman problem if the court only ratified some injury, and I think Mr. Johnson is, among other things, trying to bring his clients under that, that you did the injury when you got the agreement, and then the court just ratified it, and I hear what he's saying in the sense that I would assume that the state court judges didn't engage in some inquiry as to, you know, is this a good thing or a bad thing? It's just that the parties want it, and nobody objects to my so-ordering, and I'm going to so-order it. If that's not what the cases mean by merely ratifying, what do they mean? So to address the point slightly out of order, part of the reason that there was no inquiry on the state court as to the validity of these judgments is because the plaintiffs did not have the authority to do so. And I think the case partly explains that. Were any of them represented by counsel at that time? Yes. Two, yes. Ms. El-Shabazz and Mr. Cho were both represented by counsel. As for an example of something that's merely ratified, I think that the Eastern District opinion in Green v. City of New York is an example of that. The situation there was that there was a separate calculation of a lien amount that would be used against money that would be reimbursed to the plaintiffs there. That was essentially separate from the agreements, though it was then incorporated into the agreement in the sense that the lien could be set off against the award from those settlement agreements. So that just ratified whatever calculations took place independent of the terms of the agreement. Here, however, the alleged harms arise entirely from the terms of the agreement, all of the harms that arise from that are bound up in the terms of the agreement themselves. They don't come from an outside source. That simply kind of gets imported into it. And so I think that's the difference between ratification and a direct challenge to the terms of the agreement themselves, which is what is the case here. They are seeking to ask a federal district court, which again is a court of original and not appellate jurisdiction, to look at the terms of a state court judgment and determine that they are invalid, that they can't be enforced, whether they are looking . . . You know, to the extent they are arguing that in some sense it's invalid, it's not invalid based on any error of the court, is it? I mean, it's not like they're saying, please tell the city it can't enforce this judgment because the district court, the trial court, Supreme Court, whoever, made a procedural error or even a constitutional error. They didn't give us a fair hearing on these terms and so declare it invalid. The invalidity that they're asserting is based on the negotiation of the settlement by the city. Does that make a difference? No, it doesn't, because to the extent that they are alleging that there is coercion, that this were not truly entered into voluntarily, that would be a ground to have attacked it at the outset and for the court not to have so ordered these judgments. That is part of, then, the judgment. So the attack is on not . . . Again, it was unchallenged, but not seeing that these were coerced, that these were not voluntary, and thus that there couldn't be an agreement in this case. So that is part and parcel of the judgment. The fact that it wasn't addressed below doesn't matter. I lost my train of thought, I apologize. And the fact that the reasoning wasn't explained doesn't matter. If the court had written a one-sentence decision saying that this looks all good to me, I don't think there's any issue so ordered, I don't think that changes anything either. It doesn't matter what avenue in the plaintiffs have found. The fact is that it's a jurisdictional bar, and so they don't have . . . the plaintiffs don't have an avenue in by any route. That's what it means to be jurisdictional. It's not jurisdictional except for certain instances. Thank you, Mr. . . . Thank you very much. Mr. Johnson, you've reserved some time for rebuttal. Thank you, Your Honor. Counsel for the city suggested that the parties here have essentially different views of the Rooker-Feldman doctrine, and I think that's absolutely correct. It seems to me that both the city and also the court below view Rooker-Feldman as a doctrine about essentially respect for state court judgments. And of course, federal courts owe respect to state court judgments, but that respect is determined by the doctrine of res judicata and preclusion. And the way that works is that federal courts give state court judgments the same preclusive effect that they have in the state courts. And that's really the fundamental error that occurred below, is that the court essentially conflated those two doctrines, which is exactly what the Supreme Court said not to do in Exxon Mobil. Let's say there had been a proceeding and the court on its own at the urging of the Supreme Court, after some hearing, entered this agreement as its judgment. Would we be here talking about this? No, I don't think we would if it was a merits judgment. But you have a right to appeal that up the chain. Exactly, Your Honor. Yes, exactly. And you don't have a right in any way to take that, take what occurred north up through the appellate division and on to Albany? No, we cite cases in our briefs where people tried to appeal from judgments, so order and stipulations, and argue that those judgments were, that the stipulation was invalid, for instance, obtained through coercion. And what the courts of appeal said is, no, you have to raise that issue first in the trial court. We don't even have jurisdiction to hear it. Now, of course, we— So you can, but you could, or the parties could, sorry, the plaintiffs could take this back to the trial court and say, hey, when you did this, you made a mistake. Absolutely. And I think that shows, I think, why this case is exactly like Green v. Mattingly, where this court held that Rooker-Feldman doesn't bar a challenge to an interlocutory order of the state court. So essentially, we're in a situation here where there was the order of proving, so ordering the stipulation is an interlocutory order. Other things like comedy might bar it. Absolutely. There are other doctrines that apply. That might apply here. If it hasn't been raised. No. Well, I understand. But if we send you back, it would surprise me if it did get raised. Absolutely. That would be an issue to address in the court. But the trial court should consider that in the first instance. Absolutely. All right. Did you have anything else? No. Thank you, Your Honor. Thank you both. We'll reserve decision and get back to you in due course.